| | |
|---|---|
| BRYAN L. MUSOLF, | Civil No. 07-4764 (JRT/JJK) |
| Plaintiff, | |
| v. | |
| JEFF ELLIS, individually and in his capacity as a Mower County Deputy Sherriff, and MOWER COUNTY, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

Duane A. Kennedy, **KENNEDY LAW OFFICE**, 724 First Avenue Southwest, Suite #3, Rochester, MN 55902; William L. French, **FRENCH LAW OFFICE**, 400 South Broadway, Suite #103, Rochester, MN 55904, for plaintiff.

Jason M. Hiveley and Jon K. Iverson, **IVERSON REUVERS, LLC**, 9321 Ensign Avenue South, Bloomington, MN 55438, for defendants.

This case is before the Court on plaintiff Bryan Musolf's ("Musolf") and defendants Deputy Jeff Ellis and Mower County's (collectively, "defendants") cross-motions for summary judgment. Musolf moves for summary judgment on his excessive force claims under 42 U.S.C. § 1983 and defendants move for partial summary judgment on Musolf's *Monell* claims against Mower County. For the reasons discussed below, the Court denies Musolf's motion and grants defendants' motion.

## BACKGROUND

On October 3, 2006, Lisa Musolf called 911 to report that her estranged husband, plaintiff Bryan Musolf, had entered her home in violation of an order for protection.[1] Deputies David Pike and Jeff Ellis of the Mower County Sheriff's Department responded to the 911 call. Pike and Ellis both testified that they were aware that Musolf had a violent history, in part because they had responded to prior domestic abuse calls involving the Musolfs. Pike and Ellis also testified that they were aware that Musolf was a flight risk.

After arriving at the home, the deputies were informed by Lisa Musolf that Musolf had fled to a nearby soybean field. Because the deputies had probable cause to arrest Musolf for violation of the order for protection, Ellis proceeded to the field with his trained K-9 partner, Tazer. Ellis testified that he made an initial "canine warning," yelling that if Musolf did not respond to his voice, Ellis would release Tazer to find him and that "he may bite." Ellis testified that he did not receive a response and that he placed a harness and fifteen-foot leash on Tazer to begin tracking Musolf. Ellis also testified that after announcing two more canine warnings, he saw a figure twenty yards ahead of him laying in the grass. Recognizing the figure as Musolf, Ellis demanded that Musolf get on the ground on his stomach and show his hands. The parties dispute whether Musolf actually complied with Ellis's command.

---

[1] Lisa Musolf obtained the order for protection after a previous domestic dispute in which Musolf had thrown a crescent wrench in her vicinity.

It is undisputed, however, that within seconds of finding Musolf in the field, Ellis sent Tazer to apprehend Musolf. Tazer engaged Musolf by biting him on the lower right leg. Ellis testified that he again demanded that Musolf get on his stomach and show his hands. After Musolf complied, Ellis gave Tazer the release command and Tazer released his hold on Musolf. Musolf was treated by paramedics and medical professionals at Austin Medical Center and St. Mary's Hospital and later pled guilty to a felony-level domestic abuse violation of an order for protection.

On November 13, 2007, Musolf brought this action against defendants under 42 U.S.C. § 1983, alleging that Ellis used excessive force to arrest him and asserting that Mower County was liable for Ellis's actions by virtue of its deliberate indifference to a pattern of unconstitutional conduct by the Mower County Sheriff's Department. The parties then filed these cross-motions for summary judgment and partial summary judgment.

## DISCUSSION

**I.  STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the

light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.  MUSOLF'S MOTION FOR SUMMARY JUDGMENT ON EXCESSIVE FORCE

Musolf alleges several bases for his excessive force claim. First, Musolf generally contends that Ellis used excessive force by deploying K-9 Tazer when the circumstances did not warrant the use of a canine. Musolf also argues that Ellis's use of force was excessive because Ellis did not give a canine warning prior to releasing Tazer from his leash, Ellis unnecessarily prolonged Tazer's attack on Musolf, and the use of a K-9 in those circumstances constituted unwarranted deadly force.

The right of citizens to be free from excessive force is "clearly established" under the Fourth Amendment's prohibition against unreasonable seizures, and a violation of this right will support an action under 42 U.S.C. § 1983. *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998). The use of force in making an arrest is excessive under the Fourth Amendment if it is not "objectively reasonable under the particular circumstances." *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994). When considering the particular circumstances, courts consider factors including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he actively resisted arrest or attempted to evade arrest by flight. *Winters v. Adams*, 254 F.3d 758, 765 (8th Cir. 2001). Force that later seems unnecessary

does not violate the Fourth Amendment if it was reasonable at the time, giving consideration to the fact that officers must make "split-second judgments" in "tense, uncertain, and rapidly evolving" situations. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

### A. General Excessive Force Allegations

Musolf initially argues that Ellis's use of Tazer was objectively unreasonable because Ellis deployed Tazer in spite of Musolf's claimed compliance with Ellis's commands. Defendants respond, however, that there are genuine disputes of material fact as to whether the method of Musolf's apprehension was objectively reasonable.

Here, Musolf offers merely conclusory statements that the use of a K-9 constituted excessive force because Musolf complied with Ellis's commands and because Ellis allegedly knew that Musolf was unarmed. Ellis, testified, however, that Musolf failed to heed his demands. Ellis also testified that he was aware of Musolf's violent history and was concerned about Musolf's lack of responsiveness. In those circumstances, the Court can not find that the use of force was unreasonable as a matter of law because there remains a factual dispute about the circumstances surrounding the seizure. Musolf's motion is therefore denied as to his general excessive force claims.

### B. Canine Warnings

Musolf further claims that Ellis used excessive force by failing to warn Musolf that he would release Tazer. In *Kuha v. City of Minnetonka*, 365 F.3d 590, 597 (8th Cir. 2004), the Eighth Circuit addressed a K-9 "bite-and-hold" case in which the plaintiff,

Jeffrey Kuha, brought § 1983 claims against the defendant City of Minnetonka after he fled the scene of a traffic stop for a minor traffic violation and was apprehended with the assistance of a police canine. Similar to the allegations in the instant case, Kuha alleged that police officers used excessive force by (1) deploying a K-9 trained in the bite-and-hold method when such force was unnecessary, (2) allowing the dog to attack without warning, and (3) refusing to call the dog off after it was clear that Kuha was unarmed. *Id.* at 596. The circuit reversed the district court's grant of summary judgment in favor of the defendants on excessive force claims, holding that there was a factual dispute regarding whether the officers' apprehension of Kuha was objectively reasonable.

Notably, the Eighth Circuit held that "a jury could properly find it objectively unreasonable to use a police dog trained in the bite and hold method without first giving the suspect a warning and opportunity for peaceful surrender." 365 F.3d at 598. The Eighth Circuit went on to state that the "presence or absence of a warning is a critical fact in virtually every excessive force case involving a police dog." *Id.* at 599.

Here, the parties dispute whether Ellis gave a canine warning before releasing Tazer. Musolf claims that civilian witnesses did not hear a canine warning, but admits that "Ellis and the other police officers present allege that it was given." (Pl.'s Mem. Supp. Mot. Summ. J., Docket No. 14 at 5.) Indeed, Ellis offered deposition testimony that he announced three canine warnings while he and Tazer tracked Musolf in the field. (Ellis Dep., Docket No. 22, Ex. D, at 44-45.)

Musolf also appears to argue that a failure to give a canine warning results in a *per se* objectively unreasonable seizure. *Kuha*, however, made clear that the presence or

absence of a warning was merely a "critical fact" in an excessive force case.  In other words, even if there was no evidence that a canine warning was given, that alone would be insufficient to entitle Musolf to summary judgment on his excessive force claim.  *See Kuha*, 365 F.3d at 599 ("[T]here may be exceptional cases where a [canine] warning is not feasible.").  In any event, the question of whether the warning was given is disputed.

    C.    **Unnecessarily Prolonging the Attack**

Musolf further contends that Ellis used excessive force to apprehend him by not stopping Tazer's attack until Ellis had turned onto his stomach and put his arms out.  Specifically, Musolf argues that because Ellis knew that Musolf was unarmed, the "prolonged attack" by Tazer was objectively unreasonable.  Defendants respond that the objective reasonableness of the length of the canine apprehension is disputed and therefore a jury question.

Both parties cite to a Ninth Circuit decision, *Watkins v. City of Oakland*, 145 F.3d 1087 (9th Cir. 1998), in support of their arguments.  In *Watkins*, the Ninth Circuit held that "excessive duration of the bite and improper encouragement of a continuation of the attack by officers could constitute excessive force that would be a constitutional violation."  145 F.3d at 1093.  Musolf argues that the Ninth Circuit's holding conclusively demonstrates that the attack in this case was objectively unreasonable.  The Ninth Circuit, however, merely concluded that there was factual dispute regarding the reasonableness of the length of a canine apprehension, and that a K-9 seizure **could**

constitute excessive force under the circumstances. As a result, the circuit held that the reasonableness of the force used was a jury question. *See id.*

Musolf argues that it was unnecessary to permit Tazer to maintain his hold on Musolf even though Ellis knew Musolf was not armed. On the other hand, Ellis argues that it was reasonable to continue the K-9 apprehension until Musolf complied precisely with Ellis's command to lay on his stomach and put his arms out. However, the reasonableness of the length of a Tazer's attack on Musolf is a jury question and Musolf's motion must be denied to the extent that it asks the Court to resolve this matter on summary judgment.

### D. Deadly Force

Finally, Musolf argues that Ellis violated Musolf's Fourth Amendment rights by using "deadly force" to apprehend Musolf. Musolf argues: "Force is deadly when it carries a substantial risk of causing serious bodily harm. Ellis's assault on the Plaintiff caused the Plaintiff very serious bodily injury. Ellis used Deadly Force on the Plaintiff." (Pl.'s Mem. Supp. Mot. Summ. J., Docket No. 14 at 6.)

"Apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Craighead v. Lee*, 399 F.3d 954, 961 (8th Cir. 2005). "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner,* 471 U.S. 1, 11 (1985). However, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical

harm either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Brosseau v. Haugen,* 543 U.S. 194, 197-98 (2004) (quoting *Garner,* 471 U.S. at 11).

In *Kuha,* the Eighth Circuit rejected the proposition "that [use of] a police dog constitutes deadly force." *Kuha*, 365 F.3d at 597; *see also id.* at 598 ("[T]he mere recognition that a law enforcement tool is dangerous does not suffice as proof that the tool is an instrument of deadly force." (internal quotation marks omitted)). The circuit went on to note that "[n]o federal appeals court has held that a properly trained police dog is an instrument of deadly force, and several have expressly concluded otherwise." *Id.* at 597-98 (citing Ninth and Sixth Circuit cases). Therefore, the Eighth Circuit concluded that an excessive force claim involving a police dog "is properly governed by the general [objective reasonableness] standard established in *Graham* [*v. Connor*] rather than the deadly force standard of [*Tennessee v.*] *Garner*." *Id.* at 598.

As noted above, the factual circumstances of the seizure remain disputed and summary judgment is therefore inappropriate on Musolf's excessive force claims. Further, given *Kuha*'s clear holding, the Court does not expect Musolf to make similar deadly force arguments as this litigation continues.

## III. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Unconstitutional Policy or Custom

Defendants also move for partial summary judgment on Musolf's *Monell* claims against defendant Mower County. In Count II of his complaint, Musolf alleges that

"[b]efore October 3, 2006, with deliberate indifference to the rights of its citizens, Mower County tolerated, permitted, promoted, condoned, and ratified a custom, pattern, and practice on the part of its employees, including Ellis, of unreasonable seizure and unjustified, unreasonable, and illegal use of excessive force, including the unreasonable use of police dogs." (Compl., Docket No. 1, ¶ 26.)

Under *Monell v. Department of Social Services,* a municipality or local governmental unit may be held liable under 42 U.S.C. § 1983 for the unconstitutional acts of its officials or employees if those acts are taken pursuant to an unconstitutional policy or custom. 436 U.S. 658, 694 (1978); *see also Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir. 1999). Further, "[f]or a municipality to be liable, a plaintiff must prove that a municipal policy or custom was the moving force behind the constitutional violation." *Mettler*, 165 F.3d at 1204. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 841 (1985).

A "policy" and a "custom" are not interchangeable terms in the context of a *Monell* analysis. *Mettler*, 165 F.3d 1204. "A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.* To establish the existence of a municipal "custom," however, Musolf must show:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, *i.e.,* [proof] that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998).

Defendants contend that Musolf has not properly alleged or produced evidence that a Mower County municipal policy or custom caused the deprivation of any constitutional right.

In conjunction with its canine program, the Mower County Sheriff's Policy and Procedure Manual implemented a canine policy dictating that "utilization of canines requires adherence to procedures that properly control the use-of-force potential and that channel their specialized capabilities into legally acceptable crime prevention and control activities." (Amazi Aff., Docket No. 23, Ex. A, at 1.) Under the canine policy, the decision to deploy a canine depends on the severity of the crime, whether the suspect poses an immediate threat to police officers or others, and whether the suspect is resisting or attempting to evade arrest at the time. (*Id.*) Moreover, prior to commencing a search, the canine handler must "make a clearly audible announcement" that the "canine is in the area and that the canine will be released and may bite" if the suspect does not respond and surrender. (*Id.* at 3.)

Although Musolf's expert, a former Mower County Sherriff's Deputy, testified that Mower County did not have a canine policy, Musolf now appears to concede the presence of such a policy. Indeed, Musolf now limits his *Monell* claims to the allegation that Mower County showed deliberate indifference to or tacitly authorized a custom or pattern of unconstitutional misconduct by Mower County employees. To establish such an unconstitutional custom, Musolf cites five instances in which Ellis allegedly unreasonably seized other individuals through the deployment of K-9 Tazer. (Pl.'s Mem. Opp'n Def.'s Mot. Partial Summ. J., Docket No. 26 at 2-3.) Musolf contends that those incidents indicate that Mower County was aware of how Ellis improperly "used" Tazer to apprehend individuals, but notes that Mower County never reprimanded or suspended Ellis.

Musolf's description of the five police incident reports, however, is fraught with exaggerations and misstatements of fact, and is contradicted by the actual reports. (*See* Kennedy Aff., Docket No. 27.) Further, Musolf does not produce any evidence that a legal or an administrative body investigated those seizures or ultimately found that any seizures were objectively unreasonable. Thus, in determining whether there was a pattern of unconstitutional misconduct, the Court must rely solely on the substance of the incident reports. However, the Court is unable to conclude that those reports, without more, could suggest a pattern of objectively unreasonable seizures. In short, there is no evidence of the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the [Mower County] employees." *Ware*, 150 F.3d at 880.

### B. Training of Police Officers

Musolf also alleges in his complaint that "Mower County . . . failed properly to train and supervise its employees in the training and use of police dogs, thereby amounting to a deliberate indifference to the need for such training and supervision to avoid the likely result of its employees . . . using police dogs unreasonably to seize and seriously injure citizens." (Compl., Docket No. 1, ¶ 27.) "The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.*

Defendants assert that Musolf failed to produce evidence that Mower County did not properly train its employees regarding the use of police dogs in deliberate indifference to the Musolf's or others' constitutional rights. Musolf does not respond to defendants' assertions, however, and presents no evidence suggesting that Ellis was not adequately trained to handle Tazer. After reviewing the record, the Court agrees with defendants that there is no evidence that Mower County was responsible for inadequately training Ellis in the use and deployment of canines.

Accordingly, the Court grants defendants' motion for summary judgment as to the *Monell* claims against Mower County. This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Bryan L. Musolf's Motion for Summary Judgment [Docket No. 13] is **DENIED.**

2. Defendants Jeff Ellis and Mower County's Motion for Partial Summary Judgment [Docket No. 19] is **GRANTED**, and Defendant Mower County is **DISMISSED** from this case.

DATED: July 17, 2009            ____s/ John R. Tunheim____
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
                                                    United States District Judge